## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**DAMIAN BAUSENWEIN**
**98 Circle Drive**
**Port Crane, NY 13833**

**vs.**

**SNAP-ON INCORPORATED**
**t/a SNAP-ON TOOLS**
**2801 80th Street**
**Kenosha, WI 53143**
**and**
**SNAP-ON EQUIPMENT, INC.**
**309 Exchange Avenue**
**Conway AR 72032**

**COMPLAINT AND**
**JURY DEMAND**

**Civil Action No.** 3:19-CV-0421 (DNH/DEP)

Plaintiff, Damian Bausenwein, by his attorneys, Cozen O'Connor and the Cherundolo Law Firm, complaining of the Defendants, alleges as follows:

### NATURE OF ACTION

1.      This case involves a claim of product liability, namely, that Defendants were negligent in the design, manufacture and sale of a tire changer which was sold and delivered to Donald Lane d/b/a B&D Exhaust Warehouse (hereinafter "B&D"), 1-9 Jackson Street, Binghamton, New York.  On January 31, 2019, Plaintiff Damian Bausenwein, while employed by B&D, was critically injured when a tire and rim sitting upon the foregoing tire changer exploded and struck the Plaintiff in the right arm and face.

### THE PARTIES

2.      The Plaintiff is a citizen of the State of New York residing, at all times material hereto, at 98 Circle Drive, Port Crane, New York 13833.

3.      At all times material hereto, Defendant Snap-On Incorporated (hereinafter "Snap-On") was and is a corporation organized under the laws of the State of Delaware with its principal place of business situate at 2801 80th Street, Kenosha, Wisconsin 53143.  As a result, Defendant Snap-On Incorporated is a citizen of the States of Delaware and Wisconsin.

4.      At all times material hereto, the Defendant Snap-On Equipment, Inc. (hereinafter also "Snap-On") was and is a Delaware corporation with its principal place of business situate at 309 Exchange Avenue, Conway, Arkansas.  Defendant Snap-On Equipment, Inc. is a wholly owned subsidiary of Defendant Snap-On Incorporated and is a citizen of the States of Arkansas and Delaware.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332 since the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs.

6.      This Court has personal jurisdiction in this case since, at all times material hereto, Defendants did business within the State of New York.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since the accident giving rise to the Plaintiff's claims occurred within the area comprising the United States District Court for the Northern District of New York.

## FACTUAL ALLEGATIONS

8.      At all times material hereto, Defendants Snap-On or their subsidiaries were (and are) in the business of designing, manufacturing, distributing and/or selling equipment, including Snap-On Tire Changers.

2

9.     At all times material hereto, Michael Clark and/or Clark Tools, Inc. were a franchisee of one or both of Defendants.

10.    At all times material hereto, Defendants marketed, advertised, displayed for sale and sold tire changers under their commercial trade name "Snap-On."

11.    Defendants Snap-On, their agents, servants, employees, subsidiaries, subcontractors and franchisees (including Michael Clark and Clark Tools, Inc.) designed, engineered, developed, manufactured, fabricated, assembled, tested, inspected, supplied, distributed, sold, installed and placed into the stream of commerce Snap-On Model EEWH312A Tire Changers.

12.    Sometime prior to January 31, 2019, Defendants, their agents, servants, employees, franchisees and/or subsidiaries designed, manufactured, sold and delivered a Snap-On EEWH312A Tire Changer bearing serial number T13MH016 to Donald Lane d/b/a B&D Exhaust Warehouse.

13.    On or about January 31, 2019, the subject tire changer was being used in a proper manner at B&D without having been altered or modified.

14.    On January 31, 2019, Plaintiff Damian Bausenwein, as an employee of B&D, was using the foregoing Snap-On tire changer machine designed, manufactured and sold by Defendants' agents, servants, employees, franchisees or subsidiaries to mount and inflate a tire upon a rim.

15.    On January 31, 2019 while Plaintiff was attempting to inflate a tire with the foregoing tire changer in the usual and customary manner, the tire changing machine rim gripping internal chuck catastrophically failed to restrain or contain the tire/rim assembly to the

3

foregoing tire changer when the tire exploded resulting in serious injury to the Plaintiff as hereinafter set forth in greater detail.

16.     The internal chuck tire gripping mechanism, while adequate for restraining the rim to the machine for tire changing was and is totally inadequate for positive retention of the tire assembly to the machine during an energetic event such as a tire explosion.

17.     As early as 1998, Defendants knew of the risk of tire and rim explosions and serious injuries to operators of Snap-On tire changing machines especially during tire inflation operations.

18.     As early as 1998, Defendants' engineer, Rino Spaggiari, had invented a guarding device to prevent injuries to operators of Snap-On Tire Changers.

19.     The Operation Instructions for the EEWH312-A Tire Changer states that users should "always use safety restraint arm to hold wheel in place while inflating."

20.     The EEWH312-A Tire Changer sold and delivered to Plaintiff's employer was not equipped with such a safety restraint arm when delivered to Plaintiff's employer.

21.     The EEWH312-A Tire Changer sold and delivered to Plaintiff's employer without the foregoing safety restraint arm was not minimally safe for its expected use.

## COUNT I - NEGLIGENCE
### (Against all Defendants)

22.     Plaintiff incorporates by reference each of the allegations contained in paragraphs 1-21 above as though more fully set forth at length herein.

23.     Defendants were negligent in designing, manufacturing, testing, inspecting, distributing, promoting, marketing and/or the sale and installation of the foregoing tire changer in the following ways, including but not limited to:

4

(a)     failing to incorporate safety devices designed and invented by Rino Spaggiari to constrain a wheel and tire assembly on a platform on the Snap-On tire changer that Plaintiff was using on January 31, 2019;

(b)     failing to incorporate safety devices such as the safety restraint arm and knob that Defendants offered on their "standard" tire changing equipment on the tire changer in question that would prevent serious personal injury, a risk that was well known to the Defendants for many years prior to the design, manufacture and sale of the tire changer product in question;

(c)     negligently manufacturing and selling the tire changer without adequate safeguards and fail safe mechanisms;

(d)     negligently designing, manufacturing, assembling, marketing, supplying, distributing, selling, installing and placing into the stream of commerce an unreasonably dangerous product that was being used for the purpose for which it was intended;

(e)     negligently designing, manufacturing, assembling, marketing, supplying, distributing, selling, installing and/or otherwise placing into the stream of commerce a product that the Defendants knew or should have known was unreasonably dangerous;

(f)     failing to equip the foregoing tire changer with a center post clamp;

(g)     failing to equip the foregoing tire changer with a proper and effective pressure relief valve;

(h)     failing to equip the foregoing tire changer with a safety cage;

(i)     inadequately and improperly engineering, designing, manufacturing, fabricating, assembling, testing, inspecting and installing the tire changer;

(j)     supplying the tire changer in a condition which Defendants knew or should have known subjected the Plaintiff to an unreasonable risk of harm;

(k)     negligently failing to properly, sufficiently and/or accurately warn and or instruct purchasers and/or users of the potential serious hazards and dangers presented by use of the tire changer;

(l)     failing to ensure that proper and sufficient materials were used in the design, manufacture, assembly of the subject tire changer prior to marketing, supplying, distributing, selling, installing and/or otherwise placing it into the stream of commerce;

(m)     failing to adequately, properly and safely assemble, test, inspect and/or install the tire changer;

LEGAL\40419053\1

(n)     failing to adequately, properly and safely inspect, repair and/or maintain the tire changer at the B&D facility during various visits by Defendants' personnel to the B&D shop after installation and before Plaintiff's accident;

(o)     failing to do and perform those things necessary in order to avoid an unreasonable risk of harm to Plaintiff Damian Bausenwein including but not limited to adding guarding to the machine once it was in use at B&D;

(p)     failing to effectively warn Damian Bausenwein and others of the substantial risk and danger to the operator of the tire changer;

(q)     negligently failing to recall or modify the foregoing tire changer as a result of Defendants learning of the potentially dangerous propensities of the subject tire changer as Defendants learned of other similar catastrophic accidents;

(r)     making the safety of the operator of the tire changer optional; and

(s)     otherwise failing to exercise reasonable care under the circumstances.

24.     Defendants were aware of the allegations of the foregoing paragraphs and the

related potential for injury for many years prior to January 31, 2019.

25.     Defendants' negligence as alleged above was the proximate cause of the injuries

suffered by Damian Bausenwein on January 31, 2019.

26.     Defendants are vicariously liable for the negligent actions and omissions of their

employees, subsidiaries and franchisees.

27.     The conduct of Defendants in selling a tire changer without appropriate safe

guards constituted a callous disregard for the safety of the product's users.

28.     As a direct and proximate result of the negligence, carelessness and other liability

producing conduct of the Defendants, their agents, servants, employees, franchisees and/or

subsidiaries, Plaintiff has experienced devastating injuries to his right upper extremity including

his hand, forearm and elbow as well as significant injuries to his face and head including

multiple fractures and displaced teeth and a right sided pneumothorax.

6

29.     As a direct and proximate result of the negligence, carelessness and other liability producing conduct of the Defendants, Damian Bausenwein has experienced and will in the future experience severe and permanent pain and suffering, loss of enjoyment of life, mental anguish and emotional distress.

30.     As a direct and proximate result of the negligence, carelessness and other liability producing conduct of the Defendants, Damian Bausenwein has suffered severe and permanent scarring which will likely require further surgeries.

31.     As a direct and proximate result of the negligence, carelessness and other liability producing conduct of the Defendants, Damian Bausenwein has suffered and will in the future suffer a loss of earnings and earning power.

32.     As a direct and proximate result of the negligence, carelessness and other liability producing conduct of the Defendants, Damian Bausenwein has and will have in the future significant ongoing medical complications that will limit his activities of daily living and cause him significant conscious pain and emotional suffering, loss of enjoyment of life, mental anguish and emotional distress.

33.     As a direct and proximate result of the negligence, carelessness and other liability producing conduct of the Defendants, Plaintiff has incurred and will in the future incur substantial medical and hospital expenses, prescription expenses and rehabilitation expenses for Plaintiff's medical and dental care and treatment for which he is entitled to reimbursement.

WHEREFORE, Plaintiff Damian Bausenwein demands judgment for compensatory and exemplary damages against the Defendants, and each of them in such a fair and reasonable amount as may be awarded by a jury of his peers in an amount in excess of Seventy-Five

7

Thousand Dollars ($75,000) together with such other and further relief that the Court may deem just and proper, including the taxable costs and disbursements of this action.

## COUNT II – STRICT PRODUCTS LIABILITY
## (Against all Defendants)

34.     Plaintiff fully incorporates by reference each of the allegations contained in paragraphs 1-33 above as though each were fully set forth at length herein.

35.     The foregoing tire changer was in substantially the same condition on January 31, 2019 as it was when it was sold and delivered to B&D.

36.     The subject tire changer was defective in design and manufacture and in the inadequacy of required safety devices as indicated in paragraph 23 (a-s) above.

37.     The subject tire changer, in design and manufacture, was unfit for its intended use and therefore unreasonably dangerous to its users of the machine.

38.     The subject tire changer's defects and lack of safety features offered on "standard" Snap-On Tire Changers caused the Plaintiff to suffer serious injuries as indicated above.

39.     The Defendants' strict liability producing actions and omissions as alleged above were the proximate cause of the severe injuries suffered by Plaintiff.

40.     As a direct and proximate result of the negligence, carelessness and strict liability producing conduct of the Defendants, their agents, servants, employees, franchisees and/or subsidiaries, Plaintiff has experienced devastating injuries to his right upper extremity including his hand, forearm and elbow as well as significant injuries to his face and head including multiple fractures and displaced teeth and a right sided pneumothorax.

41.     As a direct and proximate result of the negligence, carelessness and strict liability producing conduct of the Defendants, Damian Bausenwein has experienced and will in the future

8

experience severe and permanent pain and suffering, loss of enjoyment of life, mental anguish and emotional distress.

42.     As a direct and proximate result of the negligence, carelessness and strict liability producing conduct of the Defendants, Damian Bausenwein has suffered severe and permanent scarring which will likely require further surgeries.

43.     As a direct and proximate result of the negligence, carelessness and strict liability producing conduct of the Defendants, Damian Bausenwein has suffered and will in the future suffer a loss of earnings and earning power.

44.     As a direct and proximate result of the negligence, carelessness and strict liability producing conduct of the Defendants, Damian Bausenwein has and will have in the future significant ongoing medical complications that will limit his activities of daily living and cause him significant pain and suffering, loss of enjoyment of life, mental anguish and emotional distress.

45.     As a direct and proximate result of the negligence, carelessness and strict liability producing conduct of the Defendants, Plaintiff has incurred and will in the future incur substantial medical and hospital expenses, prescription expenses and rehabilitation expenses for Plaintiff's medical and dental care and treatment for which he is entitled to reimbursement.

46.     As a result of the foregoing, the Defendants are strictly liable to the Plaintiff for compensatory and exemplary damages in an amount to be determined by a jury, together with interest, the costs of suit and all such other relief as the Court deems proper.

WHEREFORE, Plaintiff Damian Bausenwein hereby demands judgment for compensatory and exemplary damages against the Defendants, in such a fair and reasonable amount as may be awarded by a jury of his peers in an amount in excess of Seventy-Five

9

Thousand Dollars ($75,000) together with such other and further relief that the Court may deem just and proper, including the costs and disbursements of this action.

## COUNT III – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### (Against all Defendants)

47.     Plaintiff fully incorporates by reference each of the allegations contained in paragraphs 1-46 above as though each were fully set forth at length herein.

48.     Defendants warranted by implication that the foregoing tire changer product was of merchantable quality and fit and reasonably safe for use and made in consideration of reliable research conducted by qualified and knowledgeable professionals.

49.     Further upon information and belief, the Defendants made expressed and implied representations about the quality, design and fitness of the product as an inducement to encourage the purchase and use of the product.

50.     Defendants' warranties were not true, and the product was not safe or reasonably suitable and fit for the uses intended and expected by the Defendants for the public, including this Plaintiff Damian Bausenwein.

51.     The Defendants breached the foregoing warranties in that the subject tire changer failed to operate as promised, implied, expected and relied upon.

52.     These breaches of expressed and implied warranties by Defendants were a proximate cause of the Plaintiff's injuries as alleged in this Complaint.

53.     As a direct and proximate result of the negligence, carelessness and breach of warranty by the Defendants, their agents, servants, employees, franchisees and/or subsidiaries, Plaintiff has experienced devastating injuries to his right upper extremity including his hand, forearm and elbow as well as significant injuries to his face and head including multiple fractures and displaced teeth and a right sided pneumothorax.

10

54.     As a direct and proximate result of the negligence, carelessness and breach of warranty by the Defendants, Damian Bausenwein has experienced and will in the future experience severe and permanent pain and suffering, loss of enjoyment of life, mental anguish and emotional distress.

55.     As a direct and proximate result of the negligence, carelessness and breach of warranty by the Defendants, Damian Bausenwein has suffered severe and permanent scarring which will likely require further surgeries.

56.     As a direct and proximate result of the negligence, carelessness and breach of warranty by the Defendants, Damian Bausenwein has suffered and will in the future suffer a loss of earnings and earning power.

57.     As a direct and proximate result of the negligence, carelessness and breach of warranty by the Defendants, Damian Bausenwein has and will have in the future significant ongoing medical complications that will limit his activities of daily living and cause him significant pain and suffering, loss of enjoyment of life, mental anguish and emotional distress.

58.     As a direct and proximate result of the negligence, carelessness and breach of warranty by the Defendants, Plaintiff has incurred and will in the future incur substantial medical and hospital expenses, prescription expenses and rehabilitation expenses for Plaintiff's medical and dental care and treatment for which he is entitled to reimbursement.

59.     As a direct result of the Plaintiff's reliance on the Defendants' warranties, Plaintiff suffered the injuries and damages complained herein.

60.     As a result of the foregoing breach of warranties, the Defendants are liable to the Plaintiff for compensatory damages in an amount to be determined by a jury, together with interest, the taxable costs of suit and all such other relief as the Court deems proper.

LEGAL\40419053\1

WHEREFORE, Plaintiff Damian Bausenwein demands judgment for compensatory and exemplary damages against the Defendants, in such a fair and reasonable amount as may awarded by a jury of his peers in an amount in excess of Seventy-Five Thousand dollars ($75,000) together with such other and further relief that the Court may deem just and proper, including the taxable costs and disbursements of this action.

**COZEN O'CONNOR**

Dated:  April 8, 2019

/s/ *Christopher C. Fallon, Jr.*
Christopher C. Fallon, Jr., Esquire
45 Broadway
New York, NY  10006
(800) 523-2900
                and
CHERUNDOLO LAW FIRM, PLLC
Robin C. Zimpel-Fontaine, Esquire
100 Madison Street
Syracuse, NY  13202
(315) 449-9500

*Attorneys for Plaintiff*