UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAMIAN BAUSENWEIN,

    Plaintiff,

   -v-       3:19-CV-421

SNAP-ON INCORPORATED,
trading as Snap-On Tools, and
SNAP-ON EQUIPMENT, INC.,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

COZEN O'CONNOR LAW FIRM  CHRISTOPHER C.
Attorneys for Plaintiff      FALLON, JR., ESQ.
200 Four Falls Corporate Center
West Conshohocken, PA 19428

CHERUNDOLO LAW FIRM, PLLC ROBIN C. ZIMPEL-FONTAINE,
Attorneys for Plaintiff      ESQ.
AXA Tower One 15th Floor
100 Madison Street
Syracuse, NY 13202

RICCI TYRELL JOHNSON AND  JOHN E. TYRELL, ESQ.
 GREY
Attorneys for Defendants
1515 Market Street, Suite 1800
Philadelphia, PA 19102

PILLINGER MILLER TARALLO,      KENNETH ALFRED
   LLC                               KRAJEWSKI, ESQ.
Attorneys for Defendants
500 Corporate Parkway, Suite 106
Amherst, NY 14226

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On April 8, 2019, plaintiff Damian Bausenwein ("Damian," "Bausenwein," or "plaintiff"), a tire shop technician, filed this products liability action against defendants Snap-On, Inc. and Snap-On Equipment, Inc. (collectively "Snap-On" or "defendants"), a parent company and its affiliate that are responsible for, *inter alia*, the design, manufacture, and sale of commercial tire-changing machines.

Bausenwein alleges that he was injured while changing a tire with one of Snap-On's machines because the product failed to include an important safety mechanism. Plaintiff asserts claims for (1) negligence; (2) strict products liability; and (3) breach of express and implied warranties.

On January 28, 2021, Snap-On moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. According to defendants, Bausenwein has failed to marshal evidence from which a reasonable jury could conclude that the alleged design defect was a substantial factor in

causing his injuries.  Plaintiff opposed and cross-moved for summary judgment in his favor on his negligence and strict products liability claims. The motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**

On December 24, 2014, B&D Exhaust Warehouse, Inc. ("B&D Exhaust"), a mechanic shop in Binghamton, New York, purchased from Snap-On a model EEWH312A tire-changing machine (the "312A Tire Changer").  Defs.' Rule 7.1(a)(3) Statement ("Defs.' Facts"), Dkt. No. 49-2 ¶¶ 10, 12.

Commercial tire-changing machines manufactured by Snap-On and its competitors are used by tire technicians to dismount and mount tires onto automobile rims.  As relevant here, the tire and rim are placed horizontally onto the 312A Tire Changer, which loosely resembles a pedestal or turntable that rotates to facilitate the process of changing out a tire.

Unlike previous models manufactured and sold by Snap-On, the 312A Tire Changer did not include a "safety restraint arm" as standard equipment.  *See* Defs.' Facts ¶¶ 13, 17.  The safety restraint arm swings over the pedestal or turntable and is placed above a rim during inflation.  As plaintiff explains, this safety feature reduced the risk of injury from a catastrophic tire or rim failure by keeping the wheel in place on the pedestal.  Pl.'s Rule 7.1(a)(3) Statement ("Pl.'s Facts"), Dkt. No. 50-3 ¶ 2.

Instead of a safety restraint arm, the 312A Tire Changer had a different safety feature: a pressure-limiting device. Defs.' Facts ¶ 14. This pressure limiter worked by automatically stopping inflation once the pressure level inside the tire reached 55 PSI.[1]  *Id.* ¶ 15. In Snap-On's view, the inclusion of this pressure limiter made the older safety restraint arm a redundant safety feature. *Id.* ¶ 16. Even so, Snap-On continued to offer the safety restraint arm as an optional accessory for the 312A Tire Changer. *Id.* ¶¶ 16–17.

On January 31, 2019, Damian and his father Henry were both working at B&D Exhaust when a customer named Peter Basti came into the shop with two tires and one rim. Defs.' Facts ¶¶ 1, 29–30, 46. Mr. Basti asked plaintiff and his father if they could demount the tire currently seated on the rim and swap it with another tire he had brought in, which was rimless. *Id.*

Bausenwein has no memory of the incident that followed. Defs.' Facts ¶¶ 27–28. However, according to plaintiff's father Henry, the two of them agreed to Mr. Basti's request. *See id.* ¶ 31. After all, plaintiff testified that he had used the 312A Tire Changer "at least 800 times" without any problems. *Id.* ¶ 53. Plaintiff and his father took Mr. Basti's tires and the rim to the 312A Tire Changer. *Id.* ¶ 31. They demounted the first tire and mounted the second tire onto the rim. *Id.* ¶¶ 31–32. They also managed to

---

[1]  PSI is an abbreviation for a unit of measurement known as "pound-force per square inch." PSI is a common unit for measuring pressure.

inflate the new tire up to 45 PSI, turn off the air hose, and disconnect the hose from the tire. *Id*. ¶¶ 33–34.

The parties agree that the only thing left to do at this point in the process was to release the newly inflated tire from the 312A Tire Changer, set it on the ground, and return it to the customer. Defs.' Facts ¶ 35. Henry testified that he turned his back on the 312A Tire Changer and left his son to handle these final steps in the process. *See id*. As he walked away from the machine, Damian's father heard an "explosion." *Id*. ¶ 37. Henry turned back toward plaintiff and the 312A Tire Changer, where he saw the tire and plaintiff "fly in the air." *Id*. ¶ 38. Plaintiff suffered injuries to his face and arm as a result of the explosion.[2] Pl.'s Facts ¶ 14; *see also* Compl. ¶ 40 (alleging "devastating injuries" including "multiple fractures and displaced teeth and a [collapsed lung]").

Donald Markoff, another customer in the shop at the time of the incident, also testified that he heard a loud bang and saw a "tire fly vertically off a tire machine." Defs.' Facts ¶ 40. According to Mr. Markoff, he saw plaintiff standing in front of, and facing, the 312A Tire Changer just prior to the explosion. *Id*. ¶ 41. In fact, Mr. Markoff testified that plaintiff was leaning over the tire with his face near the edge of the rim. *Id*. ¶¶ 42–43. Mr.

---

[2] Expert examination later revealed that the tire was 45 years old at the time of the explosion, roughly 35 years beyond its recommended service life.

Markoff further testified that plaintiff's left hand was holding the edge of the tire. *Id*. ¶ 44.  Mr. Basti, the owner of the tires and rim, did not see the accident either. *Id*. ¶ 46.  However, both he and Matthew Fiato, a friend who was present at B&D Exhaust at the time, testified that plaintiff was standing in front of the 312A Tire Changer just before the explosion. *Id*. ¶¶ 46–47.

Snap-On contends that Bausenwein's body position at the time of the accident is relevant to his assertion that the inclusion of a safety restraint arm on the 312A Tire Changer would have prevented the accident or reduced his injuries.  As defendants explain, the foot pedal used for inflation is located on the left side of the machine.  Defs.' Facts ¶ 48.

In Snap-On's view, the safety restraint arm only provides protection during the inflation process.  Defs.' Facts ¶ 50.  Because inflation had already been completed and Bausenwein was standing in front of the machine at the time of the explosion, Snap-On argues that a safety restraint arm would not have protected plaintiff anyway. *Id*.

Bausenwein, for his part, acknowledges that the safety restraint arm would eventually have to be moved out of the way in order to remove the tire from the machine and complete the job.  Pl.'s Response to Defs.' Facts, Dkt. No. 50-2 ¶¶ 51–52.  However, according to plaintiff, the safety restraint arm found on previous models of the tire-changing machine must remain in place until a set of clamps that hold the rim on the machine are removed. *Id*.

According to plaintiff, these clamps were still engaged at the time of the explosion.  *See id.*

## III.  LEGAL STANDARD

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party."  *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV.  DISCUSSION

Snap-On argues that Bausenwein's complaint must be dismissed because he has failed to offer any evidence to establish that the safety restraint arm would have been engaged at the precise time of the accident.  Defs.' Mem.,

Dkt. No. 49-3 at 6–7.[3]  Defendants further argue that plaintiff's (1) breach-of-warranty claims are untimely; and any (2) punitive damages request should be dismissed as unsupported by the evidence.  *Id*. at 7–8.

"In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability, including contract (express or implied), negligence, or strict products liability."  *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 410 (N.D.N.Y. 2012) (D'Agostino, J.) (cleaned up).  "Although the available defenses and applicable limitations principles of the various liability theories differ, there can be a high degree of overlap between the substantive aspects of the causes of action."  *Id*.

## A.  <u>Products Liability & Negligence</u>

Bausenwein's complaint asserts separate claims for negligence (Count One) and products liability (Count Two) based on an alleged design defect; *i.e.*, Snap-On's failure to include a safety restraint arm on the 312A Tire Changer.  Compl. ¶¶ 22–33, ¶¶ 34–46.

---

[3]  Pagination corresponds to CM/ECF.

### 1. **Products Liability**[4]

"A defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018) (quoting *Scarangella v. Thomas Built Buses, Inc.*, 717 N.E.2d 679, 681 (N.Y. 1999)). "Ultimately, the inquiry in a design defect case requires a fact finder to make a judgment about the manufacturer's judgment in choosing to design a product in a certain way." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001) (cleaned up).

"Under New York law, a plaintiff asserting a claim for defective design must show that (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." *Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 42 (E.D.N.Y. 2010) (citing *Colon*, 199 F. Supp. 2d at 84).

---

[4] "There are three types of defects recognized under New York law: (1) design defects; (2) manufacturing defects; and (3) defective or inadequate warnings." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 740 (E.D.N.Y. 2016). "In design defect cases, the alleged product flaw arises from an intentional decision by the manufacturer to configure the product in a particular way. In contrast, in strict products liability cases involving manufacturing defects, the harm arises from the product's failure to perform in the intended manner due to some flaw in the fabrication process. In the latter class of cases, the flaw alone is a sufficient basis to hold the manufacturer liable without regard to fault." *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 735 n.3 (N.Y. 1995).

"The first and second requirements for establishing a design defect claim are often combined and referred to as 'the risk-utility test.'" *Rupolo*, 749 F. Supp. 2d at 42 (citation omitted).  "Under this combined test, the plaintiff 'is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner.'" *Id.* (quoting *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 208 (N.Y. 1983)).

"Under the third requirement, the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury." *Rupolo*, 749 F. Supp. 2d at 42 (cleaned up); *see also Lara*, 174 F. Supp. 3d at 740 ("In order to establish a *prima facie* case [of design defect], the plaintiff must show that . . . the defectively designed product was the actual and proximate cause of the plaintiff's injury.").

Snap-On contends that Bausenwein has failed to satisfy the third requirement; *i.e.*, causation.  Defs.' Mem. at 9–15.  According to defendants, "the safety restraint arm is designed to potentially prevent rim ejections *during inflation*."  *Id.* at 12 (emphasis in original).  As defendants explain, the tire inflation process had already been completed at the time of the explosion.  *Id.* at 12–13.  Because the restraint arm must always be moved out of the way before the tire can be removed from the machine and returned

to the customer, the notion that the safety restraint arm would have even been engaged at the time of the explosion is based purely on speculation.  *See id.* at 14–15.

Bausenwein responds by pointing to the testimony of his father Henry, who testified that he would not have moved the safety restraint arm "until the clamps were removed from the tire."  Pl.'s Opp'n, Dkt. No. 50 at 14–15. Plaintiff also contends that the "clamps were still on the tire at the time of the explosion."  *Id.*  Thus, in plaintiff's view, "there can be no question that the safety restraint arm would have been in place and would have prevented [plaintiff's] injuries."  *Id.*

In reply, Snap-On argues that there is no evidence at all that the clamps were still engaged at the time of the explosion.  Defs.' Reply, Dkt. No. 51 at 7. Even assuming otherwise, defendants argue that (a) disengaging the clamps and (b) removing the safety restraint arm are two, distinct operations and can be performed interchangeably.  *Id.* at 8.  Defendants reiterate that there is simply no evidence in the record to establish that the safety restraint arm would have been engaged at the time of the explosion.  *See id.*

Where, as here, the parties have cross-moved for summary judgment, a reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Marcano v. City of Schenectady*, 38 F.

Supp. 3d 238, 246 (N.D.N.Y. 2014) (McAvoy, J.) (citation omitted).  In undertaking this analysis, it bears noting that "a district court is not required to grant judgment as a matter of law for one side or the other."  *Id.*

Upon review, both parties' motions for summary judgment on the design defect claim must be denied.  Snap-On's motion is based principally on Bausenwein's alleged lack of proof as to proximate causation.  According to defendants, plaintiff has not offered any evidence from which a reasonable jury could conclude that the alleged design defect proximately caused the explosion and his resulting injuries.  In defendants' view, "there is no evidence to demonstrate that if the subject tire changer had been equipped with the safety restraint arm, the safety restraint arm would have been in place and engaged at the time of plaintiff's accident."  Defs.' Reply at 10.

"The concept of proximate cause, or more appropriately legal cause, has proven to be an elusive one, incapable of being defined to cover all situations."  *Derdiarian v. Felix Contracting Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980) (citations omitted).  "In everyday terms, the concept might be explained as follows: Because the consequences of an act go endlessly forward in time and its causes stretch back to the dawn of human history, proximate cause is used essentially as a legal tool for limiting a wrongdoer's liability only to those harms that have a reasonable connection to his actions."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d

Cir. 1999).  Importantly, though, "[p]roximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect."  *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) (cleaned up).

As relevant here, a products liability plaintiff is not required to show that the alleged defect was "the sole or even dominant cause" of the injury; instead, where "more than one factor operates separately or together with others to cause an injury . . . , each may be a proximate cause if it is a substantial factor in bringing about the injury."  *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 56 (2d Cir. 2000) (citation omitted); *see also Maxwell v. Howmedica Osteonics Corp.*, 713 F. Supp. 2d 84, 91 (N.D.N.Y. 2010) (Suddaby, J.) ("If there are multiple proximate causes, the test is whether the defendant's defective or unreasonably dangerous design was a 'substantial cause' of the injury.").

Generally speaking, the "issue of whether a product is defectively designed such that its utility does not outweigh its inherent danger is generally one 'for the jury to decide . . . in light of all the evidence presented by both the plaintiff and defendant."  *Yun Tung Chow v. Reckitt & Colman, Inc.*, 950 N.E.2d 113, 116 (N.Y. 2011) (quoting *Voss*, 450 N.E.2d at 204); *see also Rupolo*, 749 F. Supp. 2d at 42 ("Usually, whether or not a defect was indeed a substantial factor is a matter for the trier of fact to decide.").

"But—at least in federal court—a defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial." *Acquisto v. Manitowoc Co., Inc.*, 273 F. Supp. 3d 343, 348 (W.D.N.Y. 2017) (cleaned up). Instead, "[i]t need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Bausenwein's design defect claim is based on the absence of a particular safety feature: the safety restraint arm.[5] Thus, plaintiff must point to some evidence from which a reasonable jury could conclude that the safety restraint arm (if included in the 312A Tire Changer's design) would have still been engaged at the time of the explosion; *i.e.*, that the alleged defect in the design of the product—the absence of the restraint arm—was a "substantial factor causing the plaintiff's injury."

Bausenwein himself has no memory of the injury or of any of the events leading up to the explosion. Plaintiff has admitted for the purpose of

---

[5]  In other words, plaintiff's claim is not based purely on the circumstantial approach to products liability recognized under New York law. *Speller ex rel. Miller v. Sears, Roebuck & Co.*, 790 N.E.2d 252, 254–55 (N.Y. 2003). Under that approach, a plaintiff is not required to identify a specific defect if he can "prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants." *Id*. at 255. For instance, in *Speller* the plaintiffs alleged that faulty wiring in a refrigerator had caused a fire that destroyed their home. *Id*. at 254. Because the allegedly faulty wire had been destroyed in the ensuing fire, the plaintiff sought to prove their claim under a circumstantial theory. *Id*.

summary judgment that he and his father finished inflating the tire and disconnected the air hose before the explosion occurred.  Pl.'s Response to Defs.' Facts ¶¶ 33–34.  Plaintiff also concedes that the only thing(s) left to do at that point in the process was to release the tire from the 312A Tire Changer, place the tire on the ground, and return it to the customer.

To complete the tire removal process, the parties agree that the safety restraint arm must eventually be swung out of the way before the tire can be removed from the pedestal.  Because inflation had been completed and Bausenwein was in the process of removing the tire from the machine, Snap-On argues that the safety restraint arm would not have protected him.

In response, Bausenwein has offered two pieces of evidence in an effort to establish a jury question on this causation requirement.  First, plaintiff has offered the testimony of his father Henry, who testified that he always removes the clamps from the tire before removing the safety restraint arm.  Ex. K to Krajewski Aff. ("Henry Dep."), Dkt. No. 49-15 at 28:20–29:13.

However, this testimony appears to be a description of Henry's own, personal practice when *he* removes a tire from the 312A Tire Changer.  But that is not what occurred in this case.  Henry testified that he left Damian to handle the task of releasing the tire, removing it from the machine, and returning it to the customer.  In fact, Henry testified that he had already turned his back and begun walking away from the machine at the time of the

explosion.  Defs.' Facts ¶ 37.  So Henry did not directly observe what happened.  Nor did any of the other customers in the shop.  *Id*. ¶¶ 40–47.

Second, Bausenwein has offered a photograph of a rusty, damaged area of a tire rim.  Ex. F to Fallon Aff., Dkt. No. 50-10.  According to plaintiff's attorney's affirmation, this photograph "demonstrates the damage that was caused to the inside of the rim by those claims that had not yet been released."  Fallon Aff. ¶ 7.  But plaintiff's attorney is not in a position to testify to that fact.  So this photograph itself does not establish that the clamps were engaged at the time of the explosion.[6]

Notably, however, a review of the record shows that Bausenwein's father Henry testified that he believed that Damian had not yet released the clamps at the time of the explosion:

> Q. All right.   When you turned, turned your back, what did you – what was left for [plaintiff] to do?
>
> A. To go over, release the tire, and set it on the ground.
>
> Q. Okay.  And what would you do to release the tire?
>
> A. Put your foot on the pedal, the – the last pedal on the end releases the grips on the tire.
>
> Q. Do you know whether [plaintiff] released those grips before the accident happened?
>
> A. To my knowledge I would say no.

---

[6]  Plaintiff might have been able to establish this connection with expert testimony, but a review of plaintiff's opposition memorandum did not reveal any citation to an expert in support of this assertion.

> Q. Okay.  What makes you say no?
>
> A. The cuts in the tire from the grips.  Because there's four cuts in the tire in the rim from the grips (indicating).  Someone had shown that it was still connected there.

Henry Dep. at 28:12–28:19.  Again, though, Henry has admitted he did not observe what happened after he completed the inflation process and turned his back on the machine.  So Henry's belief borders on speculation.

Bausenwein's experts also acknowledge that there is a dearth of evidence on this particular element.  One of plaintiff's experts admitted that disengaging the safety restraint arm and disengaging the clamps are two different operations.  Ex. P to Krajewski Aff. ("Spadone Dep."), Dkt. No. 49-20 at 48:20–48:25.  And another of plaintiff's experts conceded that he was unaware of any evidence that would indicate the safety restraint arm would have been in place at the time of the accident.  Ex. Q to Krajewski Aff. ("Bair Dep."), Dkt. No. 49-21 at 92:18–93:2.

Even so, neither party has established its entitlement to judgment as a matter of law on this particular issue.  Both parties agree that the end goal of the tire-changing process is to return the tire to the customer.  That requires the technician to eventually remove the tire from the tire-changing machine.  To that end, Bausenwein has admitted that the process of inflation was

already completed and that he was somewhere in the process of removing the tire from the 312A Tire Changer at the time of the explosion.

Thus, to show that the absence of the safety restraint arm was a "substantial factor" causing his injury at that point, plaintiff needs some evidence that the safety restraint arm would have still been engaged during this tire removal process, or perhaps some evidence that the safety restraint arm was *also* designed to protect a user when mounting and/or dismounting a tire from the machine.

Bausenwein's showing on this point is not particularly persuasive. But viewing the facts in the light most favorable to him, a reasonable jury could conclude that the explosion occurred at a moment in time when the safety restraint arm would still have been engaged. Accordingly, summary judgment on plaintiff's design defect claim must be denied.

## 2. **Negligence**

"To make out a prima facie case for negligence in New York, a plaintiff must show (1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) a breach of that duty by failure to use reasonable care so that a product is rendered defective; *i.e.*, reasonably certain to be dangerous; (3) that the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage." *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 406 (S.D.N.Y. 2013).

"Traditionally, the New York Court of Appeals has held that negligence and strict liability provide distinct forms of relief in products liability." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 63 (2d Cir. 2002) (citation omitted). More recently, however, New York courts have considered "strict products liability and negligence claims to be functionally synonymous." *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729, 754 n.20 (W.D.N.Y. 2015) (cleaned up).

Upon review, Snap-On's motion for summary judgment on this claim must be denied for the same reason it was denied on Bausenwein's design defect claim.  Accordingly, summary judgment on this claim will also be denied.

## B.  Breach of Express and Implied Warranties

Bausenwein's complaint also asserts a claim for breach of express and implied warranties (Count Three).  Compl. ¶¶ 47 –60.  This claim must be dismissed.  As an initial matter, Bausenwein abandoned this claim because he failed to address Snap-On's argument in favor of dismissal.  *Frantti v. New York*, 414 F. Supp. 3d 257, 291 (N.D.N.Y. 2019) (citation omitted).

Even assuming otherwise, this claim is also time-barred by the applicable statute of limitations.  "Under New York law, the usual limitations period for breach-of-warranty claims is four years from the date when tender of delivery is made." *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 166 (S.D.N.Y. 2011).  There are exceptions to this general rule, *see, e.g.*, *id.* (explaining the

accrual rules surrounding future performance), but neither party has invoked them in this litigation. "This rule is equally applicable to suits by a party not in privity with the manufacturer." *Vanata v. Delta Int'l Mach. Corp.*, 269 A.D.2d 175, 176 (N.Y. App. Div. 1st Dep't 2000).

Snap-On delivered the 312A Tire Changer to B&D Exhaust on December 24, 2014. Defs.' Facts ¶ 12. Bausenwein filed his complaint four years and three months later on April 8, 2019. Dkt. No. 1. Accordingly, defendants' motion for summary judgment on plaintiff's breach-of-warranty claim will be granted.

## C. **Punitive Damages**[7]

As a final matter, Snap-On contends that Bausenwein's request for punitive damages should be dismissed. Defs.' Mem. at 15–20. "The standard for an award of punitive damages in New York is a demanding one." *West v. Goodyear Tire & Rubber Co.*, 973 F. Supp. 385, 387 (S.D.N.Y. 1997). "The nature of the conduct which justifies an award of punitive damages has been variously described, but, essentially, it is conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such regard." *Home Ins. Co. v.*

---

[7] Snap-On correctly notes that punitive damages are a type of remedy, not a separate cause of action. *See, e.g.*, *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 517 (S.D.N.Y. 2018.

*Am. Home Prods. Corp.*, 75 N.Y.2d 196, 203 (N.Y. 1990) (cleaned up).[8] "Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness." *Id.*

A review of the record on summary judgment suggests Bausenwein will be unable to offer evidence that warrants a jury charge on punitive damages. However, it cannot be said as a matter of law that punitive damages would be unavailable on this fact pattern.  Accordingly, this branch of Snap-On's motion will be denied without prejudice to renew at trial.

## V.  <u>CONCLUSION</u>

A jury must decide whether Bausenwein's injuries are traceable to the absence of the safety restraint arm.  However, plaintiff's breach-of-warranty claims must be dismissed.

Therefore, it is

ORDERED that

1.  Snap-On's motion for summary judgment is GRANTED in part and DENIED in part;

2.  Bausenwein's cross-motion for summary judgment is DENIED;

---

[8] In *Home Ins. Co.*, the New York Court of Appeals concluded that punitive damages were available under New York in a products liability claim based on a failure to warn.  75 N.Y.2d at 204.  However, the Court seemed to leave open the question of whether punitive damages would be appropriate in other types of products liability litigation, such as design defect cases.  *See id.*

3. Bausenwein's breach-of-warranty claims (Count Three) are

DISMISSED; and

4. Bausenwein's design defect and negligence claims remain for trial.

The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.


Dated:  March 29, 2021
            Utica, New York.

David N. Hurd
U.S. District Judge